Elliot Gale (Bar #263326)
egale@gajplaw.com
Joe Angelo (Bar #268542)
jangelo@gajplaw.com
Gale, Angelo, Johnson, & Pruett, P.C.
1430 Blue Oaks Blvd., Ste. 250
Roseville, CA 95747
916-290-7778 ph
916-721-2767 fax

Attorney for Plaintiff
Stephanie Sarabia

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Stephanie Sarabia, <br><br> Plaintiff, <br><br> v. <br><br> Experian Information Solutions, Inc. <br><br> Defendant. | CASE NO.   2:20-cv-04850 <br><br> COMPLAINT FOR DAMAGES: <br> 1. Violation of Fair Credit Reporting Act |

COMES NOW Plaintiff Stephanie Sarabia, an individual, based on information and belief, to allege as follows:

## **INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), and 15 U.S.C. §1681i(a)(5)(A)).
2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendant in connection with their inaccurate, misleading, or

incomplete reporting of Plaintiff's debt included and discharged in Plaintiff's Chapter 7 bankruptcy.

3. The County of San Bernardino (hereinafter "CSB") is reporting Plaintiff's account as a collections account with a balance and past-due balance owed, rather than rereporting the account as included/discharged in bankruptcy.

4. Such reporting is wholly inaccurate, misleading, and adversely impacts Plaintiff's credit worthiness.

5. Plaintiff's credits score has been adversely impacted by the reporting.

6. Plaintiff's credit reports have been disseminated to third parties since the entry of her discharge and Plaintiff has been unable to obtain favorable interest rates as a result of the reporting by CSB.

7. The denials were specifically related to the CSB tradeline and its reporting of a balance and past-due balance.

8. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

## JURISDICTION & VENUE

9. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, fully set forth herein.

10. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

11. This venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

12. Plaintiff alleges that each and every defendant data furnisher was included in Plaintiff's Chapter 7 bankruptcy filing or had notice of Plaintiff's bankruptcy filing and discharge.
13. Plaintiff alleges that CSB received notice of Plaintiff's chapter 7 filing or had reason to know of Plaintiff's bankruptcy filing and discharge.
14. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.
15. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendant reported in accordance with the recognized industry standard.
16. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's ability to reorganize and repair Plaintiff's FICO Score.
17. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

18. FICO is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.
19. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

20. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.
21. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.
22. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.
23. There are 28 FICO Scores that are commonly used by lenders.
24. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).
25. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.
26. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.
27. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.
28. Each of the five factors is weighted differently by FICO.
29. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.
30. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO

Score.  Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

31. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

32. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

33. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

34. The FICO scoring formula treats both Chapter 7 and Chapter 13 Bankruptcies similarly in terms of their impact on one's FICO Score. Specifically, both Chapters have the same level of severity with respect to their FICO Score and for both, FICO uses the filing date to determine how long ago the bankruptcy took place.

### e-OSCAR

35. E-OSCAR is the web-based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax, Inc.; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

36. When a consumer sends a dispute letter to a CRA the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.

37. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

38. regarding a consumer's credit worthiness.

### Consumer Information Indicator

39. When a consumer files for bankruptcy protection certain credit reporting industry standards exist.
40. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.
41. The Consumer Information Indicator (CII) is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.
42. Under Metro 2 the CII must be reported only on the consumer to whom the information applies.
43. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.
44. In the consumer bankruptcy context CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.
45. CII Metro 2 Code "D" indicates that a Chapter 13 petition has been filed, is active, but no discharge entered.  This is usually translated on a consumer credit report as "Wage Earner Plan" or "WEP" in the "Account Status" portion of a trade line.  Such reporting alerts any potential lender that the account is no longer in a collectable status but is being handled by a Chapter 13 trustee.
46. The CII Metro 2 Code "Z" indicates that a bankruptcy petition has been filed but the chapter is undesignated/unknown.
47. The CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.
48. The CII Metro 2 Code "H" denotes that a Chapter 13 bankruptcy has been discharged.
49. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

50. The failure to update the CII field results in the account being calculated as a major derogatory or adverse account.
51. The result lowers a consumer's credit score and makes a consumer appear much less credit worthy.

### Plaintiffs Bankruptcy Filing

52. Plaintiff filed for Chapter 7 bankruptcy protection on January 31, 2018 in order to discharge various debts and improve Plaintiff's credit worthiness and FICO Score.
53. Plaintiff received her Chapter 7 discharge in May of 2018.
54. In early 2021 Plaintiff ordered a credit report from Experian, Equifax, and TransUnion to ensure proper reporting by Plaintiff's creditors after entry of her discharge.
55. Plaintiff noticed several different trade lines on her credit report all reporting inaccurate, misleading, or incomplete information that did not comply with credit reporting industry standards.
56. Various accounts with CSB reported Plaintiff's account as a collections account with a balance and past-due balance were currently outstanding.
57. In response, Plaintiff disputed the inaccurate CSB tradeline with Experian.
58. Plaintiff's dispute specifically put defendant CSB on notice that Plaintiff had filed for bankruptcy and that the account should not be listed as a collections account with a balance and past-due balance given her bankruptcy discharge. Plaintiff specifically referenced her bankruptcy filing/discharge in her dispute.
59. Plaintiff is informed and believes that each CRA received Plaintiff's dispute letter and, in response, sent Plaintiff's dispute to each DF via an ACDV through e-OSCAR.

60. On May 13, 2021 after the statutory time period had elapsed for Plaintiff to receive a reinvestigation report from the CRAs, Plaintiff ordered a second credit report from Experian for the sole purpose to ensure Plaintiff's accounts had in fact been updated.
61. The CSB account listed above had not been updated and was still appearing on Plaintiff's Experian report as a collection account with a balance and past-due balance owed.
62. Experian informed Plaintiff that the CSB debts were accurate and would not be updated/removed from her credit report.
63. Plaintiff has initiated a claim against CSB for violation of the FCRA and CCRAA pursuant to Government Code 910-913.2.  Plaintiff may amend the complaint to name CSB if her claim is not resolved.

**Inaccuracy – CSB**

64. Plaintiff was frustrated to see that Defendant CSB did not properly update the account but instead continued to report Plaintiff's account as a collections account.
65. CSB's failure to update its tradeline makes it appear as if Plaintiff still owes CSB money and that the account as not discharged in Plaintiff's bankruptcy filing.
66. Instead of reporting the CII-E, which is the indicator for an account that has been included/discharged in a chapter 7 bankruptcy, CSB continued to report the account as past-due with an outstanding balance owed.
67. Therefore, it appears that CSB can still collect against Plaintiff.
68. CSB confirmed the reporting as recently as April of 2021.
69. In addition, CSB's reporting fails to alert potential lenders that the account has been discharged and instead makes it appear as if Plaintiff failed to address the CSB account and, therefore, must pay the balance that appears on the CSB tradeline.

**Willfulness**

70. This was not a negligent act by Defendant CSB but instead an intentional act to purposefully undermine Plaintiff's ability to effectively restore Plaintiff's credit through bankruptcy.
71. CSB is not following industry standards and is instead reporting incorrect information with the hope that Plaintiff will make a payment on the account.
72. By indicating that the account is in collections with a balance owed CSB is expecting payments to be made on the account.
73. CSB reporting makes Plaintiff appear less credit worthy because the information contained in the CSB tradeline appears to imply the account was not subject to Plaintiff's chapter 7 discharge.
74. Once CSB received Plaintiff's dispute rather correct tradeline CSB instead ignored the dispute and continued to report the inaccurate information.
75. Plaintiff believes the reporting of the inaccurate and misleading information was done by CSB in order to have her make a payment on the account in order to have the negative information removed from her credit report.
76. CSB confirmed the reporting of the balance owed/past-due balance as recently as April of 2021, well after Plaintiff received her discharge.
77. Such a scheme directly undermines the integrity of not only the bankruptcy court but also the integrity of the credit reporting system at large.

**Damages**

78. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, emotional harm, and excessive stress resulting in doubt as to the effectiveness of the Bankruptcy Code.

79. Plaintiff is frustrated and annoyed that her credit has not improved since the discharge of ger chapter 7 bankruptcy as she believed the account with CSB was discharged.
80. Plaintiff's anxiety and stress has increased significantly as she learned that CSB was not acknowledging the bankruptcy discharge and believes that CSB can still collect on the account.
81. Plaintiff's credit score has remained at a low level as a result of the CSB reporting, preventing her from rebuilding her credit and impacting her ability to obtain a more favorable interest rate on extensions of credit.
82. The actions of Experian as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

## FIRST CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants)

**Experian Information Solutions, Inc. – Failure to Assure Credit Reporting Accuracy.**

83. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.
84. Experian violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.
85. Had Experian maintained reasonable procedures to assure maximum accuracy Experian would never have allowed CSB to report the account as described herein.
86. As a result of Experian's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit,

damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

### Willfulness

87. The violations described herein by Experian were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

88. Experian intentionally send consumer disputes to employees who do not live within the continental United States.

89. This is done intentionally to hide and or subvert a consumer's ability to confront individual directly responsible for approving accurate reporting.

90. These employees for Defendant Experian receive little to know training concerning how to accurately report consumer debt.

91. Instead these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate. *See Saez v. Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088 (D.Or. 2007); *Grigoryan v. Experian Info. Sols.*, Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols.*, No. CV 14-05276-AB (ASX)

92. Experian employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

93. Experian has intentionally setup this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

94. Experian knew Plaintiff filed bankruptcy and received a discharge and yet somehow allowed CSB to report inaccurately and obviously outside of recognized industry standards.

95. Given that Experian helped draft the CRRG, and Plaintiff specifically referenced industry guidelines in the dispute letter Experian knew that the CSB account was not reporting in a manner consistent with industry standards i.e. accurate, but chose to do nothing.

96. Consequently, Defendant Experian is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

97. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**SECOND CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendants)

98. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

99. **Experian – Failure to Reinvestigate Disputed Information.**

100. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

101. After Plaintiff disputed the accounts mentioned above, Experian was required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC 1681i-(a)1.

102. Experian failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.

103. Plaintiff alleges that Experian has its own independent duty to conduct a reasonable investigation 15 USC 1681i-(a)1.
104. Experian is not a passive entity bound to report whatever information a data furnisher, such as CSB, provides.
105. Plaintiff alleges that Experian is readily familiar with Metro 2 guidelines and credit reporting industry standards given that Experian helped draft said guidelines.
106. Given the aforementioned, Plaintiff alleges that Experian can and does suppress inaccurate information from being reported when DFs provide inaccurate information.
107. Experian can and does instruct DFs on how to properly report certain accounts from time to time upon request from the DF.
108. Experian failed to conduct a reasonable investigation because any basic investigation would have uncovered that certain DFs were not following credit reporting industry standards.
109. Experian therefore did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered and the error corrected.
110. Experian intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that Experian general policy is to simply parrot whatever information a data-furnishers sends.
111. Such policy and procedure inherently leads to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

### THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants)

**Experian – Failure to Review and Consider All Relevant Information.**

112. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

113. Experian violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

114. As a result of Experian's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

115. The violations by Experian were willful, rendering Experian individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

116. In the alternative, Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

117. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants)

**Experian – Failure to Delete Disputed and Inaccurate Information.**

118. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

119. Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

120. As a result of Experian's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

121. The violations by Experian were willful, rendering Experian individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

122. In the alternative, Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

123. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;
2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n,
3. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n,
4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o,
5. For determination by the Court that Creditor's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and
6. For determination by the Court that Creditor's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

|   |   |
|---|---|
|   | **Gale, Angelo, Johnson, & Pruett, P.C.** |
| Dated:    June 15, 2021 | */s/ Joe Angelo* |
|   | Elliot Gale |
|   | Attorney for Plaintiff |

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of this matter by jury.

|   |   |
|---|---|
|   | **Gale, Angelo, Johnson, & Pruett, P.C.** |
| Dated: June 15, 2021 | */s/ Joe Angelo* |
|   | Elliot Gale |
|   | Attorney for Plaintiff |